IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NOAH SYSTEMS, INC.,

            Plaintiff,                        10cv1420
                                                                  **ELECTRONICALLY FILED**

      v.

INTUIT INC.,

            Defendant.

<u>MEMORANDUM OPINION RE: DEFENDANT INUIT'S OBJECTIONS TO THE REPORT
AND RECOMMENDATION OF THE SPECIAL MASTER CONCERNING CLAIM
CONSTRUCTION (DOC. NO. 42)</u>

**I. Introduction**

In this action, Plaintiff Noah Systems, Inc. ("Noah") accuses Defendant Inuit, Inc. ("Inuit") of infringing U.S. Patent No. 7,822,657 B2 (the "'657 patent").[1] The Court appointed a Special Master, Lynn J. Alstadt, to oversee the claims construction process. Doc. No. 26. A Report and Recommendation was filed on October 26, 2011. Doc. No. 40.

Presently before this Court are Defendant Inuit's Objections to the Special Master's Report and Recommendation Concerning Claim Construction (Doc. No. 42). Inuit moved this Court to modify the conclusion of the Special Master with regard to the following claim terms: (1) "first computer"/"second computer"; (2) "automated accounting of financial transactions"; (3)

---

[1] The '657 patent is a continuation of U.S. Patent Application No. 08/313,988 ("the '988 application") which was filed on September 28, 1994, and is now abandoned. While the '988 application was pending, a new application (a continuation in part of the '988 application) was filed and issued at U.S. Patent No. 5,875,435 ("the "435 patent"). The Special Master noted that the '435 patent contains the same drawings and a "nearly identical" written description to the '657 patent. 10-cv-1420, Doc. No. 40, 3. The claims of the patents are different, but they have common terms. Noah brought a previous lawsuit against Inuit alleging violation of the 435 Patent. 06-cv-00933 (hereinafter "*Noah I*"). Summary judgment was entered in favor of Defendants in *Noah I* on January 24, 2011. Doc. No. 120.

"standardized codes"; and (4) "means for transferring funds from said first entity to said other entities." Doc. No. 42.

After briefing from both parties and careful consideration of the applicable legal principles, the Court will rule as follows.

**II. Legal Standard**

In patent infringement litigation, courts construe patents as a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377-90 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2005)).

The United States Court of Appeals for the Federal Circuit in *Phillips* provides United States District Courts with extensive instructions on how to conduct claim construction analysis:

> A court construing a patent claim seeks to [afford] a claim the [ordinary and customary] meaning it would have to a person of ordinary skill in the art at the time of the invention . . . .
>
> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words . . . .
>
> In many cases . . . determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning . . . as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . . Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art . . . .

> Within the class of extrinsic evidence, the court has observed that dictionaries and treatises can be useful in claim construction . . . . We have especially noted the help . . . technical dictionaries may provide to a court to better understand the underlying technology and the way in which one of skill in the art might use the claim terms . . . . Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art . . . . Such evidence, we have held, may be considered if the court deems it helpful in determining the true meaning of [the] language used . . . .

*Phillips*, 415 F.3d at 1303, 1313-14, 1318 (Fed. Cir. 2005) (citations and internal quotations omitted).

**III. Discussion**

  A. *"First computer"/"second computer"*

The Special Master recommended that the terms "first computer" and "second computer" be construed as follows: "first computer: a device, such as a personal computer, that can store, retrieve and process data" and "second computer: a device, such as a personal computer, different from the first computer that can store, retrieve and process data." Doc. No. 40, 11,13.

Inuit objects to the Special Master's interpretation of "first computer" and "second computer" contending that Noah's admissions to the Patent and Trademark Office contradict the recommended construction. Inuit contends that the claim construction should include the specification that the device is "used to perform financial accounting functions" because the specification is in the prosecution history (specifically to obtain allowance of the patent in dispute.). Doc. No. 43. In response, Noah argues that the Special Master's proposed construction conforms with the plain and ordinary meaning of the term and the '657 Patent's specification. Doc. No. 45, 3-4.

3

The proposed construction conforms with the plain meaning of the terms. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) ("words of a claim 'are generally given their ordinary and customary meaning' as understood by a person of ordinary skill in the art. . . ."). Furthermore, the Court agrees with the Special Master that the prosecution history does not require inclusion of the specification "used to perform financial accounting functions" because the proposed construction conforms with the specification of the '657 Patent. Therefore, the Special Master's proposed construction of the terms "first computer" and "second computer" will be adopted by this Court without change.

B. *"Automated Accounting of Financial Transactions"*

The Special Master recommended that the term "automated accounting of financial transactions" be construed as follows: "[D]etermining the desired treatment of transaction data using a computer and placing the transaction data into a ledger." Doc. No. 40, 17. Inuit concedes that the Special Master's recommended construction echoes its proposed construction. Doc. No. 43, 10. However, Inuit argues that because "determining" and "placing" must be done "without manual intervention," the term "automated" is without meaning as construed by the Special Master. Id. Inuit contends that because "without manual intervention" is the ordinary and customary meaning of "automated," this qualifier must be adopted by the Special Master. Doc. No. 43, 11.

This Court agrees with the Special Master that "without manual intervention" could not be properly included in the construction of the term because it would contradict other uses of the term in the patent specification. For example, it is specified that financial advisors may "enter, delete, review, adjust, and process data inputs before, during, and after a financial

4

transaction . . . ." '657 Patent, col. 3, line 62-col. 4, line 4. This implies that manual intervention is possible, in addition to automated transactions, and accordingly, it is not appropriate to construe the term as one that is solely automatic (i.e. without manual intervention) because it would exclude the possibility of manual intervention. Furthermore, "automated" in that context refers to the computer or computer network, not the accounting itself. Therefore, the Special Master's proposed construction of "automated accounting of financial transactions" will be adopted without change.

C. "Standardized Codes"

The Special Master recommended that the term "standardized codes" be defined as follows: "[A] predefined set of letters, numbers or a combination of letters and numbers which identify an entity or transaction." Doc. No. 40, 19. Inuit objects to the Special Master's proposed construction by arguing that the construction could apply to a generic transaction number and would not be "standardized" because it would not indicate the desired accounting treatment for the data. Doc. No. 43, 15. It contends that the construction of the term must include "to categorize transaction information" because the code differentiates items by the transaction's purpose (ex. Business or personal transactions). Doc. No. 43, 16. Inuit further contends that the Special Master erred by rejecting the requirement that standardized codes are "used consistently." Id. at 16-17.

This Court agrees with the Special Master that Inuit's proposed additions specify how standardized codes are used, rather than what they are and therefore they are not required. Furthermore, the addition of "to categorize transaction information" would contradict other uses of "standardized" in the '657 Patent and would be too restrictive. *See* ex. '657 Patent, col. 3, lines 11-17, col. 4, lines 15-21, col. 4, lines 22-23, col. 5, lines 2-5 ("a standardized account

menu for business and personal financial transactions is *often times* established.") Because the term "standardized codes" appears in claims 1, 7, and 8 in the phrase "said entities are interconnected for automated accounting of financial terms utilizing standardized codes," the use of the term "standardized codes" is set forth in the claims themselves and it is appropriate to only define what the term means, not what it does.

Furthermore, the addition of "used consistently" is not required because of the plain and ordinary meaning of "standardized." Therefore, because this Court is not persuaded by Defendant's objections, the Special Master's proposed construction of "standardized codes" will be adopted without change.

D.  *Dispositive Weight to Construction of Terms in Noah I*

Inuit contends that the Special Master erred because dispositive weight was not given to "means for transferring funds from said first entity to said other entities," a claim term which was defined in prior litigation between the parties. Doc. No. 43, 19-21.[2]

The Special Master noted that when the same term appears in claims of separate but related patents, they are presumed to have the same meaning in both cases unless a contrary construction is compelled. Doc. No. 43, 20 *citing Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003). However, the Special Master found that *stare decisis* only applied to constructions that had been adopted the United States Court of Appeals for the Federal Circuit. Doc. No. 40, 4. The Special Master cited case law that "claim construction orders are not final and may be altered by the Court prior to, or during trial." *Id. citing Cisco Systems, Inc. v.*

---

[2] The terms that Inuit argues should be given dispositive weight under *stare decisis* are: (1) "financial accounting system"; (2) "means for transferring funds from said first entity to said other entities"; (3) "transferring funds"; (4) "financial accounting computer"; (5) "financial transaction computer"; and (6) "financial accounting computer cooperates with a financial transaction computer." Doc. No. 43, 19. The Special Master adopted the Court's construction of five of the six terms. Doc. No. 40.

*Telecordia Technologies, Inc.*, 590 F.Supp. 2d 828, 830 (E.D. Tex. 2008) ("Claim construction orders are not final and may be altered by the court prior to, or during, trial. . . . The fact that a district court's *Markman* order is reviewed *de novo* by the Federal Circuit, resulting in a reversal rate of forty percent according to some studies, cautions parties and the public against excessive reliance on any district court's construction.")

The case law cited by both parties for this issue demonstrates that there is conflicting case law on this point, but this Court finds that both the United States Supreme Court and the United States Court of Appeals for the Federal Circuit have noted that *stare decisis* is based upon prior claim constructions by the United States Court of Appeals for the Federal Circuit. *See Markman v. Westview Instruments*, 517 U.S. 370, 391 (1996) (claim construction is an issue for the court, not juries, who can apply *stare decisis* to those questions not under the authority of a unified appeals court) and *Miken Composites v. Wilson Sporting Goods*, 515 F.3d 1331, 1338 (Fed. Cir. 2008) (emphasizing that construction of claim terms from previous litigation before the Federal Circuit would run counter to *stare decisis*).

The United States Court of Appeals for the Federal Circuit has not conducted a *de novo* review of the *Noah I* claim constructions which Inuit argues should be binding on this Court through *stare decisis*. Therefore, *stare decisis* ("to stand by things decided") does not apply to claim constructions in this case. As such, the Court will not apply the previous construction of "means for transferring funds from said first entity to said other entities" through *stare decisis* and will instead consider Defendant's objections to the Special Master's construction of the term in this case.

   E.  *"Means for Transferring Funds From Said First Entity to Said Other Entities"*

The Special Master recommended that the term "means for transferring funds from said first entity to said other entities" be defined as follows: "[A] fund transfer facility in which the first entity and other entities have established accounts and funds/payments are electronically transferred between accounts, subtracting an amount of money from the account of one entity and adding a corresponding amount of money to the other account of money." Doc. No. 40, 20-21.  Inuit objects to the Special Master's construction alleging that it omits the clearinghouse, which contradicts established Federal Circuit law and omits a necessary part of the structure. Doc. No. 43, 17-19.

The Special Master and parties agree that the term is a means-plus-function claim.  Doc. No. 43, 18, *see* 35 U.S.C. § 112 ¶ 6.  A two-step claim construction process applies to means-plus-function elements.  First, the claimed function must be identified and then secondly, the corresponding structure described in the specification for performing the function must be identified.  *See, e.g., Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003); *Cardiac Pacemakers, Inc. v. St. Jude Med. Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002).

Here, the identified function is "transferring funds."  Doc. No. 42, 22.  Inuit contends that a clearinghouse is a mandatory component of the structure to perform this function and cites the Patent to support its position.  Doc. No. 43, 19 ("[A]n effective system must have a funds transfer clearinghouse." '657 patent, 2:7-9 and "access to any and all payment clearinghouses is anticipated along with the funds transfer facility." Id. at 6:30-31.)  The Special Master noted these provisions, but because a transfer of funds could occur without a clearinghouse, he found

that the statements only indicated that a clearinghouse is "preferred and likely would be used," but was not required. Doc. No. 40, 22.

This Court agrees. A clearinghouse is "anticipated" and will be found in an "effective system," but is not required in every case. The proposed construction effectively describes the structure which is able to perform the function, "transferring funds." Therefore, this Court will adopt the Special Master's proposed construction of "means for transferring funds from said first entity to said other entities" without change.

### IV. Conclusion

For the preceding reasons, Defendant's Objections to the Special Master's Report and Recommendation (Doc. No. 42) will be DENIED.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties